IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EM SPECIALISTS, P.A. (d/b/a KANSAS EMERGENCY PHYSICIANS),<br><br>     Plaintiff,<br><br>          v.<br><br>EMERGENCY MANAGEMENT MIDWEST, LLC D/B/A TEAMHEALTH MID-AMERICA; AMERITEAM SERVICES, LLC; MEDISERV MEDICAL INFORMATION SERVICES, LTD,<br><br>     Defendants. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff EM Specialists, P.A., doing business as Kansas Emergency Physicians ("Plaintiff" or "KEP"), by and through its undersigned counsel, brings this Complaint against Defendants Emergency Management Midwest, LLC (d/b/a TeamHealth Mid-America); AmeriTeam Services, LLC; and Mediserv Medical Information Services, LTD ("Mediserv") (collectively "Defendants" or "TeamHealth"), and alleges as follows, based upon personal knowledge as to itself, and upon information and belief as to all other matters.

### INTRODUCTION

1. This is an action for breach of contract and tortious interference with a business relationship.

2. KEP is an emergency room physicians' group that has contracted with AdventHealth Midwest Region ("AdventHealth") (f/k/a Shawnee Mission Medical Center) for more than forty years to staff their hospitals and provide emergency room medical care to patients throughout the Kansas City metropolitan area.

1

3.      Defendants are members of the TeamHealth Companies, sometimes referred to as the TeamHealth Organization, a collection of affiliated and integrated for-profit healthcare companies that are all subsidiaries of the same holding company and collectively operate as one organization nationwide, including in the State of Kansas, under the brand name TeamHealth.

4.      TeamHealth collectively makes up one of the largest providers of outsourced physician staffing solutions for hospitals in the U.S., including providing hospitals with emergency room physicians and hospitalists. TeamHealth has tried to aggressively expand since it was acquired in 2017 by a private equity firm, Blackstone, for $6.1 billion.  *See* TeamHealth, "TeamHealth to be Acquired by Blackstone", available at https://www.teamhealth.com/news-and-resources/press-release/teamhealth-to-be-acquired-by-blackstone/   (last accessed March 15, 2024).

5.      Through its complex web of subsidiaries and affiliates, the TeamHealth Organization operates as one of the largest emergency room staffing and billing companies in the United States.  However, since none of the entities are publicly traded companies, there is little publicly available information about the complex structure of the collective TeamHealth entities, making it difficult before discovery to determine with certainty all the particular TeamHealth entities who were involved in the actions alleged herein.

6.      In 2022, TeamHealth approached the administrators at the AdventHealth hospitals in the Kansas City area and proposed that TeamHealth replace KEP as the providers of emergency care at AdventHealth's Kansas City-based hospitals.

7.      Although KEP is not privy to all the conversations that occurred between TeamHealth and the hospital, AdventHealth presented KEP with a document showing that

TeamHealth had made AdventHealth a proposal offering AdventHealth terms for service that were substantially less than what AdventHealth had been paying KEP.

8. AdventHealth then used TeamHealth's proposal to insist that KEP either renegotiate the current contract with less advantageous terms to KEP or merge with TeamHealth.

9. TeamHealth's solicitation of AdventHealth was a direct breach of a non-solicitation provision in KEP's contract with TeamHealth's subsidiary, Mediserv, which TeamHealth authorized and was aware of when it approached AdventHealth.

10. Mediserv, acting under the apparent authority of TeamHealth, agreed to the non-solicitation provision on behalf of itself and, according to the amended agreement, "its parent, Team Health, Inc. ("TeamHealth"), which includes TeamHealth's affiliates and subsidiaries (all of which are hereinafter referred to collectively herein as the "Team Health Companies")[.]"

11. TeamHealth's solicitation of AdventHealth was done willfully and with the knowledge it would be interfering with KEP's existing and on-going relationship with AdventHealth, and with an intent to put financial and economic pressure on KEP to sell to TeamHealth as part of a plan by TeamHealth to expand into the Kansas City area. TeamHealth's solicitation occurred without justification and in breach of contract.

12. As a result of TeamHealth's actions, KEP was forced to renegotiate its contract with AdventHealth in competition with the new proposal from TeamHealth and as a result was forced to accept lower rates to the detriment of the doctors who own KEP.

13. This action seeks compensation for KEP because the breach of contract and tortious interference has caused KEP to suffer financial harm in the form of lower payments for its services.

## PARTIES

14. Plaintiff EM Specialists, P.A. or KEP is a professional association organized in Kansas in 1971. Its principal place of business is 9100 W. 74th Street, Shawnee Mission, KS 66201. It currently does business as Kansas Emergency Physicians or KEP, and it has been previously known as Overland Park Family Medical Practice, P.A. and Shawnee Mission Medical Center Emergency Physicians, P.A. It is an entity owned by board certified emergency physicians and is a citizen of Kansas.

15. Defendant AmeriTeam Services, LLC (hereinafter "AmeriTeam") is a Tennessee limited liability company headquartered in Knoxville, Tennessee. AmeriTeam is a direct, wholly owned subsidiary of Team Finance, LLC ("Team Finance, LLC, a Delaware limited liability company whose sole member is Team Health Holdings, Inc.). AmeriTeam employs the officers and administrators of the TeamHealth Organization, sets the policies that govern the TeamHealth Organization, and otherwise directs and supports the operations of the TeamHealth Organization. AmeriTeam is a separate legal entity but acts in coordination with the collective TeamHealth Organization.

18. Defendant Emergency Management Midwest, LLC d/b/a/ TeamHealth Mid-America ("EMW") is an Oklahoma limited liability company with its principal place of business in Pleasanton, CA; thus, EMW is domiciled in Oklahoma and California. TeamHealth Mid-America conducts business in Kansas and other parts of the Midwest working in coordination with the rest of the TeamHealth Organization.

16. Defendant Mediserv Medical Information Services, LTD ("Mediserv") is a Texas Limited Partnership with its principal place of business in Knoxville, Tennessee; thus Mediserv is domiciled in Texas and Tennessee. As of February 2018, Mediserv is a wholly owned subsidiary

4

of Health Care Financial Services, LLC ("HCFS"). Mediserv is a separate legal entity but is controlled by and acts as an agent of the TeamHealth Organization.

## JURISDICTION & VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States, and the amount in controversy exceeds $75,000.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

19. All Defendants are subject to the Court's personal jurisdiction with respect to this action because this action arises both from a contractual relationship entered with a resident of this state and the commission of tortious acts within this state.

## FACTUAL ALLEGATIONS

### *KEP's Long-Term Contractual Relationship with AdventHealth*

20. KEP has had a business relationship with AdventHealth since 1973.

21. KEP has been in a continuous business relationship with Shawnee Mission Medical Center and subsequently AdventHealth Midwest Region since 1989.

22. Typically, the parties have reviewed the contract rates periodically as the hospital system has expanded. Prior negotiations occurred in 2016 and 2010 as the group contract was revised to reflect coverage expansions.

### *KEP's Contract with Mediserv Precluding Solicitation of AdventHealth*

23. Mediserv is a company that provides emergency physician groups with coding, billing, information reporting, and collection services.

24. KEP had a contractual relationship with Mediserv starting in 2011. KEP issued a request for proposal and Mediserv won the bid to provide billing and other services in 2011 and was the sole provider of billing services for KEP in the last 12 years.

5

25. In February 2018, HCFS Health Care Financial Services, LLC, an affiliated entity of TeamHealth, acquired Mediserv.

26. In May 2018, KEP, referred to in the contract as the "Client," and Mediserv amended their contract. *See* Exhibit 1, attachment hereto.

27. The Amendment states that the following shall be added as Section 8 to the Agreement:

**8. NON-SOLICITATION, COVENANT NOT TO COMPETE AND CONFIDENTIALITY**

> 8.1 Mediserv acknowledges that it has been hired by Client for the provision of emergency physician coding, billing, information reporting, and collection services. Accordingly, Mediserv recognizes that emergency physician staffing services at the Hospitals are a valuable underlying asset of Client by which such billing and accounts receivable management services are based. Therefore, Mediserv does hereby agree for itself, and on behalf of its parent, Team Health, Inc. ("TeamHealth"), which includes TeamHealth's affiliates and subsidiaries (all of which are hereinafter referred to collectively herein as the "TeamHealth Companies"), that commencing on February 1, 2018 and during the term(s) of the Agreement and for a twelve (12) month period thereafter, Mediserv and the TeamHealth Companies shall refrain from and shall not knowingly, whether by telemarketing, direct mail or otherwise, solicit a Hospital or Client's management, physicians, advanced practice clinicians and administrative staff as set forth on Schedule A attached hereto (together, the "Staff") as such shall be updated from time to time, for the business of providing or securing the contract to provide emergency physician staffing services at the Hospital emergency department for which such Billing Services are based.

*See id.*

28. Since TeamHealth is in the business of providing outsourced emergency room physician services to hospitals, this provision was added to the contract for the express purpose of protecting KEP. Indeed, Mediserv, through its role providing services for KEP, has had access to information about KEP's billing rates and other confidential information. Thus, the contract

6

provision was added to protect KEP so that TeamHealth affiliated entities could not approach the hospitals that KEP had contracted with to provide emergency room services.

29. TeamHealth authorized Mediserv to add the contractual amendment knowing this was added to protect KEP.

30. Upon information and belief, Mediserv provided a list of entities contracted with KEP to TeamHealth on a quarterly basis, so TeamHealth had the information necessary to determine whether it was prohibited from approaching AdventHealth Midwest Region.

31. TeamHealth knew or should have known through this list that it was contractually prohibited from approaching AdventHealth Midwest Region because of the contractual amendment and KEP's existing contractual relationship with the Kansas City-based hospitals.

*TeamHealth Solicits AdventHealth*

32. In April 2022, AdventHealth and KEP had preliminary discussions about revisiting the terms of their contract. At first, this appeared to be consistent with previous cycles as AdventHealth had another planned expansion—Lenexa City Center Hospital. At this time, KEP was planning to ask for increased subsidies from AdventHealth as a result of inflation and other market adjustments.

33. These discussions continued sporadically until a meeting on October 11, 2022.

34. At this meeting, the hospital administrators informed KEP's leadership group that a representative of TeamHealth and AdventHealth had been in discussions about a plan for TeamHealth to take over KEP's contract because TeamHealth could provide the services at a lower cost to the hospital. On information and belief, the TeamHealth representative who had been leading the communications with AdventHealth was Lance Williams. Upon information and belief, he was working in cooperation with Dr. Marty McBee on a plan for TeamHealth to expand

into the Kansas City area. At the direction of TeamHealth, the AdventHealth hospital administrators suggested that KEP speak to TeamHealth about a merger.

35. KEP's leadership group reluctantly agreed to a lunch with representatives of TeamHealth at the behest of the hospital. At the lunch, it quickly became apparent that this was not a merger but instead KEP would be assimilated into the TeamHealth Organization, losing all autonomy. TeamHealth's actual goal was to gain a "foothold" in the Kansas City market with plans for further expansion.

36. KEP also learned that TeamHealth had provided the hospital with a proposal that included specific contract terms that proposed lower payments for providing the same services.

### *The Effect of TeamHealth's Solicitation and Pricing Proposal on KEP's Contract*

37. The hospital administrators used TeamHealth's proposal as a bargaining tool to negotiate a more favorable deal with KEP.

38. TeamHealth's proposal to the hospital directly undercut KEP's existing subsidies.

39. KEP has historically had a model that calls for diminishing subsidy as volume grows. TeamHealth undercut those subsidies by millions of dollars, giving the hospital leverage to accelerate the reduction of KEP's reimbursements.

40. KEP was forced to make concessions it never would have made historically because of the threat that AdventHealth would end the more than 40-year contractual relationship in favor of TeamHealth.

41. AdventHealth Midwest Region did not issue an RFP, and upon information and belief, it had not sought competitive bids from any entities.

42. Upon information and belief, AdventHealth did not obtain a proposal for services from any entity other than TeamHealth.

## COUNT I

### Breach of Contract
### (Against Defendant Mediserv)

43. Plaintiff incorporates here by reference all previous paragraphs, as if fully set forth herein.

44. Plaintiff and MediServ entered into a binding contract.

45. KEP performed in compliance with the contract in all respects.

46. In consideration for continuing the contract after MediServ was acquired by TeamHealth entity HCFS, MediServ agreed to a contract amendment on behalf of TeamHealth that added a non-solicitation agreement, as described above.

47. MediServ and/or TeamHealth's lawyers drafted the contract amendment language.

48. The contract amendment drafted by Mediserv and/or TeamHealth's lawyers identifies "Team Health, Inc. ("TeamHealth")" as the parent of Mediserv.

49. The contract amendment as drafted by Mediserv and/or TeamHealth's lawyers is intended to obligate and bind "TeamHealth's affiliates and subsidiaries (all of which are hereinafter referred to collectively herein as the "TeamHealth Companies")" to the non-solicitation provision of the contract amendment.

50. Although Mediserv and/or TeamHealth's lawyers did not add any of the TeamHealth entities as signatories to the contract amendment with KEP, since Mediserv was owned by and operated within the TeamHealth Companies, as defined by Mediserv and/or TeamHealth in the contract amendment, KEP understood that Mediserv had the authority to obligate all TeamHealth entities, even if they were not added as direct signatories to the non-solicitation provision of the contract.

51. KEP understood that MediServ was authorized to add this contract provision on behalf of the TeamHealth Companies for the benefit and protection of KEP's business interests.

52. Under this amendment, Mediserv and all of the affiliated TeamHealth companies owed a duty to KEP to avoid solicitation of AdventHealth.

53. KEP executed the contract amendment with Mediserv in reliance on the representation that the "TeamHealth Companies" would mandate that all TeamHealth affiliates and subsidiaries abide by the non-solicitation provision of the contract amendment.

54. Mediserv breached the contract because TeamHealth affiliated entities solicited AdventHealth knowing that KEP had an existing contract with AdventHealth, which was in direct violation of the terms of the amendment.

55. As a direct and proximate result of Mediserv's breach, KEP has suffered and will suffer substantial damages in an amount estimated to be at least several million dollars, and to be determined at trial.

## COUNT II

### Tortious Inference with a Contract and/or Prospective Business Relationship
### (Against Defendants EMW and AmeriTeam)

56. Plaintiff incorporates here by reference all previous paragraphs, as if fully set forth herein.

57. KEP had an existing and on-going contract with AdventHealth, with an expectancy and probability of future economic benefit to KEP from its relationship with AdventHealth.

58. The TeamHealth Companies, including EMW and AmeriTeam, knew that a contract existed between KEP and AdventHealth, and that KEP had an expectancy with the probability of future economic benefit from its relationship with AdventHealth.

59. The TeamHealth Companies, including EMW and AmeriTeam, also knew that Mediserv and TeamHealth had taken steps to protect KEP's expectancy of future economic benefit with AdventHealth by amending KEP's contract with Mediserv, to protect KEP from solicitations of AdventHealth by any TeamHealth entity, including but not limited to EMW and AmeriTeam.

60. Lance Williams, Senior Vice President at TeamHealth Mid-America, according to his LinkedIn profile, approached AdventHealth with the express goal of procuring AdventHealth's breach, termination or non-renewal of its contract with KEP, by undercutting KEP's contract terms, when he knew or should have known that all TeamHealth entities were prohibited from doing so.

61. Upon information and belief, Mr. Williams works for or at the direction of the legal entities EMW and/or AmeriTeam.

62. TeamHealth, including but not limited to AmeriTeam and EMW, had no justification for these actions and acted willfully and wantonly towards KEP as they knew, or would have known with any amount of diligence, that KEP already had a contract with AdventHealth, and that KEP was a client of TeamHealth's affiliated company, Mediserv, and the TeamHealth Companies had expressly promised not to solicit AdventHealth.

63. But for the conduct of AmeriTeam and EMW, acting on behalf of the collective TeamHealth Organization, it is reasonably certain that KEP would have continued its contractual relationship with AdventHealth under the existing terms or better terms for KEP.

64. At the time TeamHealth's EMW and/or AmeriTeam knowingly solicited AdventHealth, TeamHealth understood that its actions would have a serious financial harm on KEP because TeamHealth regularly attempts to obtain new business from hospitals by undercutting existing contracts and its goal was to procure the AdventHealth contract by offering lower rates.

65. As a direct and proximate result of TeamHealth's actions, including AmeriTeam and EMW, acting on behalf of the collective TeamHealth Organization, KEP has suffered, continues to suffer, and will suffer, injuries, damages, and substantial harm in an amount estimated to be at least several million dollars and to be determined at trial.

## PRAYER FOR RELIEF

66. WHEREFORE, Plaintiff KEP respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. For an award of compensatory damages in an amount to be determined at trial;

B. For an award of punitive or exemplary damages, to the extent permitted by law;

C. For an award of attorneys' fees, costs, and litigation expenses, as allowable by law;

D. For prejudgment interest on all amounts awarded; and

E. Such other and further relief as this court may deem just and proper.

## JURY DEMAND

67. Plaintiff demands a jury trial on all claims so triable.

Date: March 21, 2024

Respectfully submitted,

/s/ *Tyler W. Hudson*

Tyler W. Hudson KS #20293
Eric D. Barton KS #16503
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: 816-701-1100
thudson@wcllp.com
ebarton@wcllp.com

***Attorneys for Plaintiff***

12